UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALBION WILLIAMS, JR.,

    Plaintiff,

v.                                                Case No. 8:08-CV-502-T-24-MAP

RECORD TOWN, INC. d/b/a
FOR YOUR ENTERTAINMENT and
TRANS WORLD ENTERTAINMENT
CORPORATION,

    Defendants.

_____/

**ORDER**

This cause comes before the Court on Defendants Record Town, Inc. d/b/a For Your Entertainment and Trans World Entertainment Corporation's (collectively, "F.Y.E.") Motion for Summary Final Judgment as to the claims asserted by Plaintiff Albion Williams, Jr. (Doc. No. 10). Williams argues that genuine issues of material fact remain as to whether F.Y.E. terminated his employment in retaliation for his filing a valid claim for workers' compensation benefits. (Doc. No. 19.) For the reasons stated herein, F.Y.E.'s motion is granted in part and denied in part.

**I.    Background**

F.Y.E. is a specialty music and video retailer with approximately 800 retail stores located throughout the United States. Williams began working for F.Y.E. in October of 2005, and during the relevant period, worked as an assistant sales manager at F.Y.E.'s University Mall Store in Tampa, Florida. Throughout his employment with F.Y.E., Williams's immediate supervisor was Trent Wyse, the Store Manager.

Williams was well-regarded by F.Y.E. management.  In April of 2007, Williams was rated as a high performer and was strongly recommended for the manager-in-training program.

### A. Williams's Claim for Workers' Compensation Benefits

When Williams began working at F.Y.E.'s University Mall location, he noticed mold in the store.  Williams notified the company of what he saw, and an inspection later confirmed the presence of mold in the store.

After working at the University Mall location for a couple of months, Williams began feeling ill.  In August of 2007, he was diagnosed with an upper respiratory infection, bronchitis, and sinus infection.

On August 6, 2007, Williams filed a workers' compensation claim for exposure to mold with F.Y.E.'s insurance carrier, CNA Claim Plus.  Williams eventually resolved his workers' compensation claim through settlement with the carrier.

### B. Williams's Termination from F.Y.E.

On October 17, 2007, Williams and Wyse were discussing another sales associate, Christine Peterson, who had previously been sent home by Williams for alleged insubordination, and who was taken off the schedule.  Wyse informed Williams that Associate Relations Manager Laurel Ross was contemplating allowing Peterson to return to work.  Ross worked in human resources at F.Y.E.'s corporate headquarters located in Albany, New York.  Upon hearing this, Williams commented to Wyse, "If [Peterson] comes back, I don't know if I am going to stay here."

Shortly thereafter, Wyse telephoned Ross to discuss the insubordination situation that had occurred between Williams and Peterson.  Wyse also relayed to Ross Williams's statement that

if Peterson was allowed to return, he "didn't know if [he] would still work there." Ross determined that Peterson should be disciplined, but not terminated, for her alleged insubordination to Williams and that F.Y.E. would accept Williams's statement as his two-weeks notice of resignation. After that call, Wyse informed Williams that Ross had accepted his resignation.

Later that day, Williams spoke to Ross over the phone. He told her that he did not resign from his position. He said, "I'm trying to tell you now I'm not putting in my two weeks, or I didn't put in my two weeks. So I don't know why we are, you know, arguing about this. I didn't put in my two weeks notice." However, pursuant to company policy and practice, Ross did not allow Williams to rescind his statement. Ross explained the policy this way: "Whether it's an ultimatum or whether it's giving notice, [if] a key holder [, i.e., manager] utters the words I'm quitting, we take that serious and we hold them to their word." During their conversation, Ross also told Williams that he should no longer call the human resources department about his workers' compensation claim because CNA Claim Plus would be handling it.[1] Finally, Ross informed Williams that he could not violate any company policy during the two-week notice period or he would be terminated in accordance with the company's resignation policy.

Williams was scheduled to work until 6:00 p.m. that day. However, with Wyse's

---

[1] Ross adamantly denies that she made this statement to Williams. In fact, Ross denies having knowledge that Williams made a claim for workers' compensation benefits until she received a copy of Williams's complaint. At the summary judgment stage, the Court cannot weigh the evidence; rather, it resolves all issues of material fact in favor of the non-moving party. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).

permission, he left 15 to 30 minutes before his shift was scheduled to end.[2]  At approximately 5:15 p.m. that day, Ross telephoned the University Mall F.Y.E. store and asked for Williams. Wyse informed her that Williams was not there.  At that time, Ross determined that Williams's failure to complete his assigned work shift was a violation of the company's misconduct policy. Because this violation occurred during Williams's notice period, it was grounds for termination. Ross requested that Wyse execute the termination.

On October 19, 2007, Wyse telephoned Williams to notify him of his termination.  Wyse explained that the reason he was terminated was for leaving work early without justification. The Counseling Process Form used to document the termination stated that Williams "left early without justification hereby violating time and attendance guidelines."

### C. Williams's Complaint

On or about February 19, 2008, Williams filed this suit against F.Y.E..  In his complaint, Williams alleges that F.Y.E. terminated his employment in retaliation for his filing a valid claim for workers' compensation benefits and/or his attempt to exercise his rights under Florida's workers' compensation law (Count I).  Williams also claims that F.Y.E. interfered with the lawful exercise of his rights under the Family and Medical Leave Act (Count II).

F.Y.E. has moved for summary judgment on both claims, as well as any claim for retaliation under the FMLA, to the extent Williams attempts to assert such a claim.  Williams focused his response on the workers' compensation retaliation claim and did not respond to F.Y.E. arguments for summary judgment as to any FMLA claim.  (Doc. No. 19, n.7.)  Williams,

---

[2]There is conflicting evidence regarding whether Williams had permission to leave early, and the Court resolves this issue of fact in Williams's favor. *Id.*

4

therefore, has abandoned Count II of the complaint, as well as any claim for retaliation under the FMLA.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.* When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Id.* In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## III. Discussion

Pursuant to section 440.205 of Florida's Workers' Compensation laws, "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law." Fla. Stat. § 440.205. Retaliation claims brought under § 440.205 are

subject to the burden-shifting analysis applicable to Title VII retaliation claims. *Humphrey v. Sears, Roebuck & Co.*, 192 F. Supp. 2d 1371 (S.D. Fla. 2002).

To establish a prima facie case of workers' compensation retaliation, a plaintiff must show that: (1) he sought workers' compensation benefits; (2) he suffered an adverse employment action; and (3) there is a causal connection between his claim for workers' compensation benefits and the adverse employment action. *Russell v. KSL Hotel Corp.*, 887 So. 2d 372, 379 (Fla. 3d DCA 2004). Once the plaintiff establishes his prima facie case of retaliation, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 379-80. After the employer makes this proffer, the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the legitimate reason was merely a pretext for the prohibited retaliatory conduct. *Id.*; *see also Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1061 (11th Cir. 1999).

### A. Williams's Prima Facie Case

The primary contention between the parties is whether Williams can prove a causal connection between his filing of a workers' compensation claim and his subsequent termination. To establish a causal connection, "[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a casual connection." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). However, temporal proximity alone is insufficient where "there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Id.*

F.Y.E. contends that the Court cannot infer a causal connection based on the timing alone

6

of Williams's termination. Furthermore, F.Y.E. denies that Ross knew of Williams's workers' compensation claim, and Williams's mere speculation that she was trying to force him out is insufficient to create an inference of retaliatory intent.

The Court concludes that Williams has submitted evidence that creates at least an inference that Ross's decision to terminate Williams was influenced in part by his claim for workers' compensation benefits. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (noting that the casual link can be satisfied when the employee "has adduced evidence sufficient to create an inference" that the employer's decision was influenced in part by the employee's engagement in a statutorily protected action). Williams testified that during his final conversation with Ross, during which she rejected his attempts to revoke his purported resignation, she instructed him not to call F.Y.E.'s human resources office anymore about his workers' compensation claim. Although Ross denies this statement, or any knowledge of his claim for that matter, the Court must resolve this factual dispute in Williams's favor. At the summary judgment stage, the Court must "avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913 (11th Cir. 1993). Instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (quotations and citation omitted).

Additionally, there was close temporal proximity between Williams's protected activity and his termination. Williams filed his workers' compensation claim on August 6, 2007, and he was terminated approximately two months later, on October 17, 2007. Although there is no bright line rule regarding how close the two events must be, the Eleventh Circuit has found temporal proximity when the adverse employment action occurred within a couple of months

7

after the protected activity. *Berman v. Orkin Exterminating Co., Inc.*, 160 F.3d 697, 702 (11th Cir. 1998); *see also, Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (noting that a period of one month between the protected activity and adverse action was "not too protracted" to establish a causal connection, but that a three-month lapse, standing alone, was insufficient). Here, the temporal proximity between Williams's protected activity and termination, combined with Ross's comment that Williams need not call F.Y.E.'s human resources office, are sufficient to create an inference that F.Y.E.'s actions were retaliatory.

### B. Williams's Evidence of Pretext

F.Y.E. contends that even if Williams could establish a prima facie case, he cannot show that F.Y.E.'s legitimate, non-discriminatory reason for terminating him, namely his violation of F.Y.E.'s misconduct policy for failing to complete his assigned shift, was pretextual. The fact that Williams disagrees with F.Y.E.'s determination that he violated company policy, F.Y.E. contends, is insufficient to establish pretext. Moreover, F.Y.E. argues, Williams's speculation that he was being forced out of his employment is insufficient because Ross, the decision-maker, honestly believed that he violated the policy and terminated him on that basis.

The Court agrees that "[t]he factual issue to be resolved is not the wisdom or accuracy of [the employer's] conclusion that [the employee] was an unsatisfactory employee." *Rojas v. Florida*, 285 F.32d 1339, 1342 (11th Cir. 2002). Indeed, the Court is "not interested in whether the [decision to terminate] [wa]s a correct one, but whether it [wa]s an honest one." *Id.* However, Williams has raised material factual disputes regarding the circumstances of his termination. In particular, Ross's testimony regarding whether she honestly believed that Williams left without permission on October 17, 2009, is not entirely consistent. In her affidavit,

8

she states that Wyse told her that Williams left without permission. However, at her deposition, she testified that Wyse "didn't state anything one way or the other" whether Williams should be terminated for leaving early. Moreover, the Court is concerned that, accepting Williams's version of the facts, Ross told him not to call the department she worked in about his workers' compensation claim–a comment which was made during their final conversation when Ross rejected Williams's attempt to revoke his purported resignation.

It is for this same reason that the Court rejects F.Y.E.'s contention that it is entitled to a mixed motive defense. F.Y.E. contends that, regardless of whether Williams participated in the protected activity of filing a workers' compensation claim, F.Y.E. would have terminated his employment for a violation of the work policy. However, as explained above, there are material factual disputes regarding the circumstances of Williams's termination that preclude the entry of summary judgment.

## V. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that F.Y.E.'s Motion for Summary Judgment (Doc. No. 10) is **DENIED** as to Williams's claim for workers' compensation retaliation. Williams abandoned his claim for interference with his FMLA rights contained in Count II of the complaint, and therefore F.Y.E.'s motion is **GRANTED** as to that claim.

**DONE AND ORDERED** at Tampa, Florida, this 6th day of April, 2009.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record